Oral argument not to exceed 15 minutes per side. Mr. Butler for the Plaintiff's Appellant. Good morning. Good morning, your honors. I'd like to reserve five minutes for rebuttal. Very well. May it please the court, counsel, Brian Butler for Appellant Kenny Woodruff. The District Court granted summary judgment on Mr. Woodruff's claims for disability discrimination and for failure to accommodate solely on the question of whether Mr. Woodruff could establish that a prima facie case of discrimination, specifically whether he was a qualified employee. The District Court concluded that Mr. Woodruff was not otherwise qualified for the position because he was taking opiate pain medication and did not provide a sufficient confirmation that his doctor concluded he could safely perform the duties of his position. And there are really two independent bases to overturn the District Court's opinion here. First, that the letter itself was sufficient to meet the requirements of 49 CFR 382. Brown letter? Yes. That letter is like conditional throughout, basically. Well, your honor, it gives a history of his condition and his treatment that he agreed not to drive or operate heavy machinery was the term used while under the influence, meaning while he was impaired or otherwise unable to have a clear mind because of his medication. Is that what the reg says, that if you agree to do something or does it say the medical professional certifies that even under the medication he can perform his work without impairment? The regulation actually is relatively limited and it says that the medical provider need only advise the driver that he can safely perform the duties of his position. There's no requirement of a certification of a letter to the employer or anything of the sort. It merely says advise the driver. I'm sorry to interrupt you, but the reg itself says that the medical practitioner has advised the driver that the substance will not adversely affect the driver's ability to safely operate a commercial motor vehicle. Which seems to say that it's not he's promising not to take the substance, it's that he's prescribed the substance, he's taking the substance and the substance will not adversely affect him. It's like you can have one beer and drive home, but you can't have three. And so this doesn't seem to be the sort of I promise not to situation that the Brown letter describes. Well, the I promise not to related only to whether he was impaired by the medication. He was under the influence of the medication. Not that he was not taking it. I guess what I mean, just to be candid, what I'm struggling to see here is something that says you can be taking this substance and you, Mr. Woodruff, will not be impaired when you operate heavy machinery, et cetera. I haven't seen that letter. Well, that's where Nurse Brown wrote, patient is okay to return to work without restrictions as long as he continues to deny any impairment in cognition with his pain. So it means, that letter means that as long as your client says he's not impaired, he's not impaired. That is the terminology that the nurse used, yes. And how does that square with the requirement, as Judge Kessler just pointed to, that the medical practitioner has advised the driver that the substance will not adversely affect the driver's ability? That it entirely puts it on the driver to say whether or not the substance is affecting his ability. The medical provider has no way of knowing whether a particular medication is affecting a patient one way or the other, other than the patient's subjective reports. At the end of the day, that is how a medical provider can determine. So the medical providers have no idea what the impact of, say, Vicodin is on someone? It's dependent on, I would say it's dependent on the individual. If a person, one person might be impaired because of a particular medication at a particular dosage, while another person might have no impairment. And Mr. Woodruff had been taking this medication for years, had been working at ODOT for years doing this job, and had reported that he was never impaired by it. And on that basis, the medical provider said that he could perform the job without restriction, so long as he continued. As long as he said he could perform the job without restriction. Well, so long as he continued to deny any impairment because of the medication. That was the language that the. His self-serving statement is sufficient under your analysis. I'm sorry. I mean, you know, it seems like the reg doesn't have any teeth to it. If the driver qualifies, if in his own opinion, I'm fine. I'm not impaired. I might have had all kinds of drugs and stuff, but heck, I can drive the car. You know, just like somebody had spit at the bar and had, yeah, I only had four or five, but I'm fine. You know, I would agree the regulation seems relatively toothless. But that is the regulation we are dealing. I don't know about. I mean, you're saying if he advises the doctor that he's not impaired, it's fine. But the reg says that the doctor must advise the driver that the substance will not adversely affect. So, I mean, it sounds like you're changing the roles. I mean, the doctor has to tell the driver, you will not be affected by this amount of your medication. Not the driver saying, doctor, I'm not affected. It's just what the reg says. But the doctor communicated with Mr. Woodruff and concluded, based on her communications with Mr. Woodruff, that he was not impaired by the medication. I mean, it looks like the doctor's choosing her words carefully. Well, aside from the letter, your honor, I think there's a second basis here to overturn the district court, which is that ODOT did not engage in an individualized inquiry that satisfies the requirements of the ADA and the Rehab Act. And that is, there are a number of reasons for that. First, at various points in this litigation, and the district court certainly concluded that the letter was deficient because it did not specifically say that Mr. Woodruff could operate a commercial motor vehicle. But the letter ODOT gave Mr. Woodruff to provide his physician did not ask the medical provider to answer that question. Isn't that why the Ohio Department of Transportation referred your client to Dr. Vogelstein to get an independent medical exam? And isn't that part of the interactive process? Well, your honor, I think there was a step before that that should have taken place. When Mr. Woodruff provided the letter and ODOT found it to be insufficient, it should have communicated to Mr. Woodruff why. Well, it was insufficient, so we'll explore it further by having an independent medical exam. I mean, they're doing affirmative actions here. But the independent medical exam was facially illegal. And the conclusion was facially illegal because it said Mr. Woodruff denies impairment, but people could abuse the medication and therefore... Okay, you're talking about two separate things. You start out by saying that they failed their duty to engage in the interactive process. I'm just saying, didn't they satisfy that duty, irrespective of what Dr. Vogelstein stated in his report? Didn't Ohio satisfy their obligation by referring them to the independent medical exam? Presumably referring someone to a separate doctor for an examination could qualify, but by adopting and relying on a report that is facially... and violates the ADA. Okay, I say that's a different issue, but okay. It sure looks like they're trying to work with the guy and be responsive. Hey, this letter's not good enough. Go get another letter. That doesn't happen. Okay, we'll get our own doctor. They paid some money for that, I'm sure. They're not just telling them to leave. There's a great deal of communication that's required. And when Mr. Woodruff provided the letter and ODOT found it was insufficient, it seems incumbent on ODOT to tell him why. Now, the interesting thing is there is nothing in the record. There is not a single shred of evidence in the record as to why ODOT found this letter to be insufficient. Judge Cole, in his opinion, went through an analysis, and his analysis is his analysis. But ODOT apparently had a general counsel review the letter. That general counsel was never identified as a witness. There's no testimony from that individual. There's no letter from that individual saying why the letter was insufficient. Well, did you take his deposition? He was never identified as a witness, and no. Did you ever ask for his identification? I mean, you did have discovery here, did you? Yes, the question was asked. You didn't think you had to discover who he was? The question was asked about who considered this, and he was never identified as a person. Well, you never went to the point to try to get him identified, did you? Your Honor, I can't recall every communication that took place. Do you know what discovery is? It is. But the issue here is that there's no record of why ODOT made this decision, and it never communicated it to Mr. Woodruff. And when Mr. Woodruff went back to his pain doctor and said, this letter is insufficient. They've come forth and told you why they made the decision. You say there's no record in support of it. Well, if you think that that's important, I mean, you could have gone and gotten the record. I mean, I just, I wonder if you've sustained your burden of opposing their wish for summary judgment, that's all. But at the time Mr. Woodruff had the opportunity to go back to his pain clinic doctor and obtain a revised letter, he was never told why the letter was insufficient. And had he had that information, he potentially could have gotten a different letter. My understanding, they terminated him or provisionally terminated him, but they still allowed him to reopen it or to come back for reconsideration. Is that right? He had a hearing. And I believe at the hearing or immediately before the hearing, he was provided with Dr. Vogelstein's letter. Had no real time to evaluate it. And he was told to bring medical evidence. But again, he had never been told what additional evidence he needed because he was never told why the letter was insufficient. Wasn't he also instructed that if you had additional evidence after the hearing, you can submit it, we'll consider it. Instead, he filed lawsuit. Isn't that the procedure? I believe that he was given an opportunity to attend the hearing with information, with additional information from a physician. Okay. All right. Thank you. Let's hear for counsel for the appellee. Good morning. Good morning. Judge Griffin, may it please the court. I'm going to touch on several things that have been said so far today, but I want to start with the point that this is a case where the law matches common sense. The United States Department of Transportation, as a matter of federal policy, has set a strong presumption against people driving commercial vehicles while taking controlled substances, including opioids. And it's a federal, consistent with that policy, it's a federal safety regulation here, what we've been calling the drug use regulation in the briefing that disqualified Mr. Woodruff from employment. I want to spend most of my time talking about why the letter from Nurse Brown does not meet the medical advisement exception within the drug use regulation. But before we get there, just to make sure there's no confusion, Mr. Woodruff's counsel at argument today and at many times in the briefing has suggested that the department did not tell Mr. Woodruff what was wrong with the record. The undisputed facts actually contradict those statements. If you look at Janet Page's deposition, it's record 50, page ID 1129 through 30. She outlines what the department found to be wrong with the letter, and then she says, I told Mr. Woodruff about this. She memorialized that conversation in an email. That email is Defense Exhibit 50. It's at record 61-6. The conversation took place on May 10, 2018. So the reason why we're so focused in on the Nurse Brown letter today isn't because the department didn't try to facilitate this process. I don't actually think it had a legal duty to do so in any event. But the reason why we are focused on Nurse Brown's letter today, and this is reflected in Mr. Woodruff's deposition, he went back to his clinic and they weren't willing to give him another letter. And that's record 44, page ID 241 through 42 and 261. So with that sort of record cleanup, I want to move to what I think the parties do agree. It sounds like it is the central issue in this case, which is whether the Payne Clinic letter meets the drug use regulation. I think it helps to start with the drug use regulation itself and talk about how it's structured. So the B provision is a presumptive bar, and then you have the medical advisement exception at the end that I know the court has talked about some today. And then the C provision actually bars the employer. So it takes a step further and says, if you have knowledge that this employee is using any of these medications, you cannot put that employee back on the road. So I disagree with my friend on the other side's representation that the regulation isn't doing all that much. And if you look at the exception, it's a very narrow one. What it wants, it's not a general, it's not looking for the medical practitioner to give a generalized opinion about fitness for duty. It wants a very specific affirmative promise that the driver's drug use, and I'm quoting here, will not adversely affect the driver's ability to safely operate a commercial motor vehicle. I think the court's questions today have already indicated this letter is just so conditional. There's no way it can be reasonably construed as that type of advisement. I don't want to repeat the court's questions. I do want to build on one point, and that's that something that hasn't gotten mentioned today is the letter actually affirmatively indicates something in the other direction, and that's that Mr. Woodruff cannot safely operate heavy equipment. It talks about the pain management contract that he signed with his clinic. Now, Mr. Woodruff wants that contract to only be about abusing his medication, but if you look at the contract, it's Defense Exhibit 21, there's a whole separate provision in which Mr. Woodruff agrees to take his medication as prescribed and not abuse it. So it would make no sense to have a whole separate provision about if under the influence just means abusing. He's already agreed not to abuse the medication full stop. We don't need other provisions about what he shouldn't be doing while abusing his medication. Instead, the far more natural reading is that under the influence covers taking the medication as prescribed. He's not supposed to be operating heavy equipment, and indeed that's consistent with the label on his medication. If you look at Dr. Hennon's deposition, Record 52, page ID 1376, it says right on the label here, should not be operating heavy equipment while taking this medication. I'm happy to answer any more questions about the letter and how it's phrased. I do want to take on the point about individualized inquiry. I think we agree with the notion that whether an individual is qualified for purposes of the Rehabilitation Act does require an individualized inquiry. But here the nature of the inquiry is a legal one. Does Mr. Woodruff satisfy the legal prerequisites for driving a commercial motor vehicle? And so I don't think it's a two-stage inquiry like Mr. Woodruff wants it to be. If this letter is insufficient, he's not qualified. Analysis ends there. And as this court held en banc in the Ford decision, I believe it was page 766 of that decision, if you have an individual that's not qualified, they're outside the scope of, that case was about the ADA, but it would also apply to the Rehabilitation Act's protections. So you don't even get, you don't have an actionable claim based on things like good faith or interactive process. That said, I do think the department did a commendable job of trying to facilitate this process, even if we do try and squeeze this into a good faith mold. If there are no further questions, I will end with just a very quick closing remark about liability, and that's if you accept Woodruff's interpretation of the drug use regulation, you are going to be pinning employers between liability under discrimination laws and potential tort exposure and liability under health and safety laws. This court avoided such a reading of federal employment discrimination laws in Brickers, it should do so here as well. Mr. Woodruff was not qualified for his position as a matter of federal law. Federal safety regulation was what led to his loss of employment. District Court was ready to grant a summary judgment and we ask that you affirm. Thank you. Thank you, Mr. Keller. Rebuttal? Thank you, Your Honors. I want to begin with the last thing that Counsel for ODOT stated, which was that there's no obligation to engage in good faith with Mr. Woodruff because he's not qualified. This court said in Rohrer v. City of Stowe at page 1041 that the duty to engage in good faith in an individualized inquiry applies to the determination of whether an employee is qualified. So he is not outside the scope of the ADA or the Rehab Act simply because ODOT determines he's not qualified. They have to make that determination in good faith. How do you allege that they did not engage in good faith other than you claim that they didn't tell him the reason for the denial? That's been disputed this morning. Do you disagree with their citations to the record as to that? That may be what the ODOT witness testified, but that's a disputed fact. It was not Mr. Woodruff's testimony. Does Mr. Woodruff contest that she told him? He does. He testified that she told him the letter was wrong. So it was a genuine issue of material fact. Counsel also stated that the regulation requires a very specific certification from a physician that the person can operate a commercial motor vehicle. That is what the regulation says. While they're taking the full dose of their medication. Correct. But that is not what ODOT asked Mr. Woodruff to ask his medical provider. The letter that ODOT provided to Mr. Woodruff said please certify that he can perform the duties of his position including specified equipment. It never asked the sole question that the regulation asks which is can he operate a commercial motor vehicle. Asking a much clearer question like that would have given the medical provider an opportunity to answer that question more directly. So any complaint that the letter is somehow meandering or doesn't answer the direct question is rooted in the question presented to the medical provider. Are we talking about the letter from the nurse or are we talking about the report from Dr. Vogelstein? Your Honor, I'm referring to the initial letter from ODOT that it provided to Mr. Woodruff and that is page ID 1604. It said that attached is Mr. Woodruff's position description please review these duties and his ability to safely perform these duties and the operation of the equipment specified. It never asked the medical provider to answer the singular question. I thought Mr. Woodruff went to the nurse practitioner on his own. He did not. Once he tested positive and the medical review officer determined he had a valid prescription, that was the first step. He asked Mr. Woodruff and confirmed that he had the prescription and then he indicated that Mr. Woodruff was a negative on the drug screen but that he had a safety risk. That is what started the process with ODOT. I thought Woodruff went to his own nurse. I thought it was the pain management clinic that he was treating with and he went to his own nurse requesting a letter or a report as opposed to MDOT sending him to the nurse. No, your honor, ODOT provided him a letter and that's page 1604 and it said dear physician of Mr. Kenny Woodruff and it had some information and asked him to provide a letter. Did ODOT refer your client to the nurse? It told him he had to go see his nurse. So it is his nurse, his pain clinic, to which he took the letter. And your position is that that letter didn't give the pain clinic or the nurse any idea what it was that they needed from her by way of information. So why would the nurse then have provided the letter that says he can work without restrictions as long as he continues to deny any impairment in cognition with his pain medication and as long as his employer is aware of his current medications? Why would that be there if the nurse had no idea what it was they wanted? The letter asked the nurse to say that Mr. Woodruff could perform the duties of his position safely. It did not ask the question that ODOT just stood up here and said was the only question that was relevant which was whether Mr. Woodruff could drive a commercial motor vehicle. But the only duties he had were driving commercial motor vehicles. Your Honor, the record actually reflects that I think a very small portion of his job was driving commercial motor vehicles. He worked on a road crew. Anyway, so it is your position that it is bad faith by the ODOT in signing the letter that they acted in bad faith? I would say it is a failure to act and interact with Mr. Woodruff in good faith as the ADA requires. Okay, it is hard to see bad faith or lack of good faith even if they are not as precise as they should be. It is awful hard to infer bad faith from that. I see my time is up. Could I answer briefly? If there was confusion about the letter because of maybe imprecision in what ODOT asked Mr. Woodruff to provide that could have been cleared up. But in this case, ODOT says, well it doesn't have these magic words so we are not going to let you keep your job even though we didn't tell you you needed these magic words. And then when Mr. Woodruff says, hey, my doctor says this letter should be sufficient what else do you need? They don't tell him. It all could have been cleared up. I think I understand. Any further questions? Thank you, Your Honor.